**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **PASTOR VICTOR S. COUZENS,** *et al.* | : | |
| | : | **Case No. 1:20-cv-00546** |
| **Plaintiff,** | : | |
| **v.** | : | **Judge Michael R. Barrett** |
| | : | |
| **CITY OF FOREST PARK,** *et al.* | : | |
| | : | |
| **Defendants.** | : | |

_____

**DEFENDANTS, CITY OF FOREST PARK, OHIO, WILLIAM ARNS, REBECCA**
**EAVERS, COREY HALL AND VADA HARRIS'S**
**MOTION FOR SUMMARY JUDGMENT**

_____

COME NOW Defendants, City of Forest Park, Ohio, William Arns, Rebecca Eavers, Corey Hall and Vada Harris, by and through counsel, and pursuant to Federal Rule of Civil Procedure 56, and move this Court for summary judgment as to all claims contained within Plaintiffs' Complaint as there exists no genuine issue of material fact and Defendants are entitled to immunity as a matter of law.  This Motion is supported by the accompanying memorandum, Federal and Ohio law, and the depositions of Plaintiff Couzens, Defendants Officers Eavers, Hall and Harris, Chief William Arns, Sgt. Jackie Dreyer, and Defendants Martin Jones and Alandes Powell, filed herein.

Respectfully submitted,

*/s Katherine L. Barbiere*_____
Lawrence E. Barbiere (0027106)
Katherine L. Barbiere (0089501)
**SCHROEDER, MAUNDRELL, BARBIERE & POWERS**
5300 Socialville Foster Road, Suite 200
Mason, Ohio 45040
513-583-4200/513-583-4203 [fax]
lbarbiere@smbplaw.com
kbarbiere@smbplaw.com
*Attorneys for Forest Park Defendants*

**M E M O R A N D U M**

## I.    INTRODUCTION

Plaintiffs Pastor Victor Couzens and the Inspirational Bible Church initiated their original Complaint on July 14, 2020 (Doc 1).  The Complaint purports to bring claims against the Forest Park Defendants as well as Martin Jones and Alandes Powell, who are former members of the Plaintiffs' congregation.  The Complaint alleges violations of 42 U.S.C. § 1983 based upon an off-duty work detail executed by the Forest Park Police Department during church services on the morning of February 9, 2020.  The Complaint also alleges one claim for civil conspiracy under Ohio law.  The Forest Park Defendants timely filed an Answer to Plaintiffs' Complaint on August 25, 2020 denying all operative claims and asserting qualified immunity among other affirmative defenses.  (Doc 10).

This Motion for Summary Judgment is directed to all claims alleged against the Forest Park Defendants and is based upon the uncontroverted facts revealed during the discovery depositions referenced above.  The Forest Park officers are entitled to qualified immunity with respect to all of Plaintiffs' Federal claims, including their claims for unreasonable search and seizure, violation of substantive due process, interference with the free exercise of religion, and conspiracy; and political subdivision immunity with respect to Plaintiffs' claims set forth under the law of Ohio. The City of Forest Park is entitled to immunity as to all claims.  Plaintiffs have failed to adequately plead any claims against Chief Arns or Forest Park and Plaintiffs are unable to attach supervisory liability against Chief Arns. At all times the conduct of the officers was appropriate and does not rise to the level of a constitutional violation.  Based upon the uncontroverted evidence, Plaintiffs have not suffered any violations of their constitutional rights.  For all of the reasons set forth below, these Defendants are entitled to summary judgment as a matter of law.

## II. FACTS

This case boils down to a dispute between members of a congregation and their pastor. This is made abundantly clear by the fact that related litigation is currently proceeding in the Hamilton County Court of Common Pleas, *Bishop Victor S. Couzens v. Union Bank and Trust, Co.,* Case No. A 2003661. Pastor Couzens took the role of Senior Pastor with the Inspirational Bible Church ("IBC") in 2000. (Doc 28, Depo. of Couzens, PAGEID 161). Couzens estimates today the IBC has approximately 300-400 members between its online and in-person community. *Id.* at 155. During the peak of its membership, IBC had approximately two thousand members. (Doc 31, Depo. of Powell, PAGEID 687). In October of 2018, there was an incident upon which Pastor Couzens was accused of having an extramarital affair. *Id.* at 770. This information was publicly posted and shared on social media, including Facebook. *Id.* As a result of this conduct, and its public reveal, the membership to IBC suffered. *Id.* at 770. In fact, the Church membership and giving units had been reduced greatly from approximately 2000 people to around 180-200 people as of November, 2019. *Id.* at 763. Pastor Couzens was aware of the declining membership and held a meeting in June of 2019 to address the declining membership and negative culture within the Church. (Doc 30, Depo. of Jones, PAGEID 487-491, 494-495). Subsequent to that meeting, an associate with the bank that held IBC's mortgage loan, contacted the Church and indicated the bank refused to do any future business with IBC unless Couzens was removed as the leader of the church. *Id.* at 522, Powell Ex. 2. As a result of the bank's letter, the dire financial condition of IBC, and due to the declining membership of IBC, the elders, or IBC's leadership board, decided to hold a vote to decide whether Couzens was to be removed as pastor. (Doc 31, Depo. of Powell, PAGEID 629-632, 659). Approximately 112 people voted and the membership voted to remove Couzens from his position. *Id.* at 679-681.

3

Defendants Alandes Powell and Martin Jones were ordained elders of the IBC.  (Doc 31, Depo. of Powell, PAGEID 647-648, 753; Doc 30, Depo. of Jones, PAGEID 560-562).  Following the vote to remove Pastor Couzens as the leader of the IBC, it was suggested to them by Bishop Davis, the executive pastor appointed by Pastor Couzens, that Jones contact Forest Park to obtain a security detail for the next church service.  (Doc 31, Depo. of Powell, PAGEID 624, Doc 30, Depo of Jones, PAGEID  527-528).  Bishop Davis and the Church elders were concerned there might be a scene with the change in leadership.  (Doc 31, Depo. of Powell, PAGEID 748).  To further facilitate the transfer of leadership within IBC, Powell hired a locksmith to change the locks of the Church.  *Id.* at 705.

The Forest Park Police Department was frequently hired to provide general security at services held at the IBC.  (Doc 29, Depo. of Dreyer, PAGEID 414, 419, Doc 35, Depo. of Davis, PAGEID 1127, Doc 33, Depo. of Harris, PAGEID 1013).  The Forest Park officers who provided security worked alongside IBC's own, private security team, who were also armed with guns and other weapons.  (Doc 31, Depo. of Powell, PAGEID 742, 792; Doc 30, Depo. of Jones, PAGEID 504).  When Forest Park was hired to work a security detail at IBC, the details were always for general security. Forest Park has a form which is filled out and submitted by IBC and processed by Sgt. Jackie Dreyer.  (Doc 29, Depo. of Dreyer, PAGEID 413-414).  General security is understood to mean the officers are there to make sure no problems arise and to maintain general order at the Church.  *Id.* at 415.  In the past, Sgt. Dreyer has received requests from various members of the IBC who have requested the detail.  *Id.* at 416.  For the February 9, 2020 detail, Sgt. Dreyer was contacted by Martin Jones.  *Id.*  Sgt. Dreyer had not previously dealt with Jones.  *Id.*  The IBC was then invoiced by the Department for the detail.  *Id.* at 417.  After Forest Park is contacted for a detail, a signup sheet is posted in the station to allow officers to volunteer for the hours.  *Id.* at 418.

4

During the requesting of the detail for February 9th, Jones mentioned Pastor Couzens to Sgt. Dreyer, and provided paperwork to show that Pastor Couzens was no longer presiding over the Church.  *Id.* at 419-421.

The two officers who worked the IBC detail were Officers Vada Harris and Corey Hall.  (Doc 34, Depo. of Hall, PAGEID 1073).  Officer Rebecca Eavers (now Davis), was on duty during the time of the morning Sunday service at IBC.  (Doc 35, Depo. of Davis, PAGEID 1128).  Pursuant to Officer Harris, it was his understanding the Pastor Couzens was involved in a legal dispute with IBC.  (Doc 33, Depo. of Harris, PAGEID 1017-18).  It was his understanding that Pastor Couzens be permitted to enter the Church as a patron and attend services as a churchgoer, but not as the pastor.  *Id.*  Officers Harris and Hall arrived at IBC around 7:15am.  *Id.* at 1023.  The officers took their normal positions during these details, which for Officer Harris was to sit by the children's church in the outer lobby.  *Id.*  Officer Hall stook near the rear of the Church, by Pastor Couzens' private entrance.  (Doc 34, Depo. of Hall, PAGEID 1079-80).  Officer Hall saw Pastor Couzens arrive and indicated through the glass that he could not let him in but to go around to the front of the Church.  *Id.* at 18.  Officer Eavers first arrived at IBC following a call to the station from Pastor Couzens.  (Doc 35, Depo. of Davis, PAGEID 1129-1131).  Pastor Couzens indicated during his service call that he was locked out of his private entrance.  *Id.*  Officer Eavers indicated she would meet Pastor Couzens at the Church.  *Id.* at 1132-33.  Officer Eavers accompanied Pastor Couzens to the Church and she noted Pastor Couzens and his wife entered the Church through the main entrance.  *Id.* at 1135.  When Pastor Couzens arrived at the Church, Officer Harris greeted him and explained that he could attend the services but was not supposed to preside over the service.  (Doc 33, Depo. of Harris, PAGEID 1025-26).  Officer Harris testified he never threated to arrest Pastor Couzens.  *Id.* at 1027.

5

Pursuant to the testimony of Pastor Couzens, when he arrived at Church that day he knew his presence would be controversial due to concerns over his leadership. (Doc 28, Depo. of Couzens, PAGEID 297-299). Pastor Couzens arrived at the Church and proceeded to walk through the sanctuary and take a seat upon the stage. *Id.* at 212. He was never touched or arrested by a police officer. *Id.* at 211. He was never charged with a crime or placed in handcuffs. *Id.* Pastor Couzens addressed the congregation and presided over the services. *Id.* at 198-199, 319. He was not restricted from speaking to the congregation once he stepped onto the pulpit. *Id.* at 184. During his remarks, the police officers left the inner sanctuary. *Id.* at 201. After Pastor Couzens finished addressing the congregation, through use of the Church microphone, he took a seat on the pulpit next to his wife. *Id.* at 201-202. Then, after a discussion with his wife, during which time Pastor Couzens testified she told him he would be arrested if he did not leave the pulpit, Pastor Couzens stood up from his seat and walked out of the stage door. *Id.* Once he stepped off the stage, Pastor Couzens testified he spoke with Officer Hall who told him to leave the Church. *Id.* at 204. At that time, Pastor Couzens testified he was also shown a letter, which was also provided to Forest Park, indicating he lacked authority to preside over the Church. *Id.* at 204-205. Pastor Couzens testified during this time, there was a lot of commotion with the congregants. *Id.* at 202-203. He testified Officer Hall reiterated that he needed to leave and Pastor Couzens agreed, though purportedly under duress. *Id.* at 206. Officer Hall then allegedly thanked Pastor Couzens for leaving. *Id.*

As things began to heat up at the Church, one of the officers called Sgt. Dreyer requesting instruction as to how to best handle the situation. (Doc 29, Depo. of Dreyer, PAGEID 422-424. Upon receiving the call, Sgt. Dreyer called her supervisor, Lt. Pape, and relayed the situation and requested input. *Id.* Sgt. Dreyer then called the officers back and gave them instruction based upon Lt. Pape's comments. *Id.* at 424-427. Officer Eavers stayed at IBC to help maintain the

peace. (Doc 35, Depo. of Davis, PAGEID 1142). She communicated her presence to the other off-duty detail officers and stood at the front entrance of the Church. *Id.* at 1141. Inside the sanctuary, the scene was chaotic and people were yelling. *Id.* at 1154-55, Doc 34, Depo. of Hall, PAGEID 1091, Doc 28, Depo. of Couzens, PAGEID 203. Pastor Couzens was at IBC that morning for approximately twenty minutes. *Id.* at 1040-41.

### III. ARGUMENT

#### a. Summary Judgment Standard

"Fed.R.Civ.P. 56 permits the use of summary judgment to ensure a just and efficient determination of legal actions when appropriate." *Stewart v. Iams Co.,* 2010 WL 1258108* 1 (S.D. Ohio, W.D. 2010); citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Thus, the grant of summary judgment is proper when the nonmoving party fails to identify any genuine issues of material fact that would require resolution at trial. *Id.* A party cannot rest "upon the mere allegations or denials of his pleading, but…must set forth specific facts showing that there is a genuine issue for trial" to oppose the properly supported motion for summary judgment. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[T]he court should not view the facts in the light most favorable to the nonmovant if that party's version of the facts is 'blatantly contradicted by the record, so that no reasonable jury could believe it.'" *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). If the evidence is merely colorable, or is not significantly probative, judgment may be granted. *Stewart,* 2010 WL at *1.

#### b. Officers Eavers, Hall and Harris Are Entitled to Qualified Immunity As To Plaintiffs' Claims Under 42 U.S.C. § 1983

The Forest Park officers are entitled to qualified immunity with respect to all of Plaintiffs' claims set forth under 42 U.S.C. § 1983. **Once the qualified immunity defense is raised, the**

***burden* is on the plaintiff to demonstrate that the officials are *not* entitled to qualified immunity**.” *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6ᵗʰ Cir. 2006) (Emphasis added); see also *El Bey v. Kehr*, 2021 WL 4033137, *7 (S.D. Ohio, Sept. 3, 2021) citing *Garretson v. City of Madison Heights*, 407 F.3d 789, 798 (6ᵗʰ Cir. 2005) (“Once a defendant has raised the defense of qualified immunity, the ***plaintiff bears the burden of proof to show that the defendant is not entitled to that defense***.”) (Emphasis added).  In *Sexton v. Cernuto*, 18 F. 4ᵗʰ 177, 184 (6ᵗʰ Cir. 2021), the Sixth Circuit recently held the following in evaluating whether or not a government official was entitled to qualified immunity:

> The qualified immunity analysis has two parts. One prong requires the court to ask whether “[t]aken in the light most favorable to the party asserting the injury, ... the facts alleged show the officer’s conduct violated a constitutional right[.]” *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  **The court must also evaluate “whether the right was clearly established.”** *Id*.  **On a summary judgment motion, the burden is on the plaintiff to satisfy both prongs**. See *Bunkley v. City of Detroit*, 902 F.3d 552, 559 (6ᵗʰ Cir. 2018). (Emphasis added).

Thus, in order to avoid summary judgment in this case, the burden is on Plaintiffs Couzens and IBC to demonstrate the Forest Park officers violated constitutional rights which were “clearly established.”  Plaintiffs do not satisfy such burden.  Accordingly, Defendants are entitled to summary judgment on all claims.

### i. Plaintiffs Fail To Demonstrate Violations of “Clearly Established” Constitutional Rights

The United States Supreme Court recently clarified what is necessary for Plaintiffs to demonstrate that a law is “clearly established” in two recent decisions both issued on October 18, 2021: (1) *City of Tahlequah, Oklahoma v. Bond*, 142 S.Ct. 9 (2021) and (2) *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4 (2021).  In both cases, the Supreme Court held the defendant police officers were entitled to qualified immunity because plaintiffs failed to demonstrate the officers’ conduct constituted violations of “clearly established” Fourth Amendment constitutional rights.

In *City of Tahlequah, Oklahoma v. Bond,* 142 S.Ct. 9, 11 (2021), the Supreme Court reversed the Tenth Circuit Court of Appeals' decision concluding that a jury could find that the officers "cornering" of plaintiff in the back of a garage recklessly created the situation that led to their ultimate use of deadly force. *Id*. The Supreme Court held the following:

> **We have repeatedly told courts not to define clearly established law at too high a level of generality**. See, e.g., *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011). **It is not enough that a rule be suggested by then-existing precedent; the "rule's contours must be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'"** *Wesby*, 583 U. S., at ——, 138 S.Ct., at 590 (quoting *Saucier v. Katz*, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). **Such specificity is "especially important in the Fourth Amendment context,"** where it is **"sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts."** *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam) (internal quotation marks omitted). *Id* at 11-12. (Emphasis added.)

In *Rivas-Villegas v. Cortesluna,* 142 S.Ct. 4 (2021), the Supreme Court reversed a Ninth Circuit Court of Appeals' decision holding that an officer's conduct in placing his knee on a suspect's back for no more than eight seconds while another officer retrieved a knife from the suspect's person did ***not*** violate a "clearly established" Fourth Amendment constitutional right. In holding that the defendant officer was entitled to qualified immunity, the Supreme Court held the case upon which the Ninth Circuit primarily relied upon to support its "clearly established" inquiry was materially distinguishable and that "**to show a violation of clearly established law**, [plaintiff] Cortesluna **must identify a case** that put [defendant officer] Rivas-Villegas **on notice that his specific conduct was unlawful**." *Id* at 8. (Emphasis added.)

In this case, the evidence presented fails to establish any infringement on a clearly established constitutional right. Here it is alleged that the officers, in the face of increasing intensity and chaos amongst the church parishioners, attempted to deescalate a situation, without

force or hostility, by asking the cause of the disruption to exit the premises.  This is standard practice of police departments, constitutional, and a review of the relevant caselaw does not reveal any case which would put the officers on notice that their conduct was unconstitutional.   To the contrary, as is set forth below, the conduct of the officers was well within the parameters of the constitution and, indeed, was the best course of action for the situation.  Officers Harris, Hall and Eavers, sued in their individual capacities, are therefore entitled to qualified immunity as a matter of law with respect to all constitutional claims alleged against them.

### ii.      The Officers' Conduct Did Not Violate A Constitutional Right

Under the second prong of the analysis, and for the reasons set forth in the following sections, on pages 10-20, it is clear the conduct of the Forest Park Defendants did not violate any constitutional rights and the officers are entitled to qualified immunity, and summary judgment, as a matter of law.

### c.  Plaintiff Couzens' Claim for Unreasonable Search and Seizure Fails As A Matter of Law
###     i.  There Was No Seizure

Plaintiffs' claim for unreasonable search and seizure in violation of the Fourth Amendment fails as a matter of law.  "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen."  *Slusher v. Carson,* 540 F.3d 449, 453 (6th Cir. 2008).  Under the Fourth Amendment, "not every governmental interference with an individual's freedom of movement raises such constitutional concerns that there is a seizure of the person."  *Skinner v. Ry. Labor Executives' Ass'n,* 489 U.S. 602, 618, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989).  "A seizure occurs if an examination of all the surrounding circumstances shows that 'a reasonable person would have believed that he was not free to leave.'"  *Shoup v. Doyle,* 974 F.Supp.2d 1058, 1073

(S.D. Ohio 2013), quoting *Smoak v. Hall*, 460 F.3d 768, 778 (6th Cir.2006) quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  Reasonableness is determined by balancing "the nature and quality of the intrusion on the individual's fourth amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Hall v. Village of Gratis,* 2008 WL 4758693, *6 (S.D. Ohio, Oct. 27, 2008).  "The assessment of reasonableness is an objective one based upon the totality of the circumstances known to the officer at the time of the incident." *Id*.

In this case, there has been no seizure – let alone an unreasonable one.  The officers asked Pastor Couzens to descend from the pulpit.  Later, Pastor Couzens testified the officers asked him to leave the scene in order to maintain the peace.  Under these facts, a reasonable person would believe he was free to leave. The Forest Park Defendants are therefore entitled to summary judgment as a matter of law.

      **i.**    **There Was No Search**

What constitutes an unreasonable "search" in violation of the Fourth Amendment is an evolving concept with the continued advent of new technology.  At its core, the Fourth Amendment guarantees the privacy, dignity and security of persons against arbitrary and invasive acts by officers of the Government or those acting at their direction.  *Camara v. Municipal Court of San Francisco,* 387 U.S. 523, 528, 87 S.Ct. 1727, 1730, 18 L.Ed.2d 930 (1967).  There is nothing alleged in the Complaint, and nothing testified to by Pastor Couzens, to indicate any kind of search occurred.  The officers appeared for the off-duty detail during Church hours, were permitted to enter the Church by those on the premises, stayed in public areas of the Church, and did not perform a search of the building or any person on site.  Following the conclusion of the services, the officers left the Church.  Nothing in the facts presented here indicate any kind of search

occurred, let alone an unreasonable search in violation of the Fourth Amendment, and as such the Forest Park defendants are entitled to summary judgment as a matter of law.

### d. Plaintiff Couzens Claim for Substantive Due Process Fails As A Matter of Law

Plaintiffs' claim for violation of their substantive due process rights fails as a matter of law. Although not entirely clear from the allegations in the Complaint, it is presumed that the substantive due process claim is premised upon Plaintiff Couzens' purported "search and seizure" upon his arrival at IBC on February 9, 2020. The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity. *Planned Parenthood of Southeastern Pa. v. Casey,* 505 U.S. 833, 847-849, 112 S.Ct. 2791, 2804-2806, 120 L.Ed.2d 674, see *Albright v. Oliver,* 510 U.S. 266, 273-74, 114 S.Ct. 807. 813, 127 L.Ed. 2d 114 (1994). Plaintiffs' claim for substantive due process is premised on the same allegations raised in support of their Fourth Amendment claim for unreasonable search and seizure. The Fourth Amendment is therefore the appropriate amendment under which to consider Plaintiffs' claims and not the more general substantive due process claim. *Graham v. Connor,* 490 U.S. 386, 395, 109 S.C. 1865, 104 L.Ed.2d 443 (1989). "Given the explicit protections afforded by the Fourth Amendment, a plaintiff cannot 'also proceed with a claim under the generalized notion of substantive due process.'" *Wilson v. Wilkins,* 362 F.App'x 440, 443 (6th Cir. 2010), quoting *Wilson v. Collins,* 517 F.3d 421, 428 (6th Cir. 2008), citing *Graham,* 490 U.S. at 395, 109 S.Ct. 1865.

Even if the Court were to consider Plaintiff Couzens' claim for violations of his right to substantive due process, it is clear this claim fails. Substantive due process involves the "right not to be subject to 'arbitrary or capricious' action by a state either by legislative or administrative action." *Pearson v. City of Grand Blanc,* 961 F.2d 1211, 1217 (6th Cir. 1992). Courts generally

have recognized two types of substantive due process claims: (1) the deprivation of a particular constitutional guarantee; and (2) actions that "shock the conscience." *Valot v. S.E. Local Sch. Dist. Bd. of Educ.,* 107 F.3d 1220, 1228 (6th Cir. 1997). Where governmental action does not fall within one of these two categories, that action "survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest." *Id.*

There is no evidence in this case to support a substantive due process claim. There has been no deprivation of any constitutional guarantee and further there has been no conduct on the part of any Forest Park defendant that would rise to the level of "shocking the conscience." To the contrary, the conduct on the part of the officers here is exemplary in that, in the face of increasing tension amongst heated parishioners, the officers remained calm, never brandished a weapon, never insulted or threatened anyone, never arrested or touched anyone, and were polite throughout the exchange. Construing all evidence in favor of the Plaintiffs here, there is nothing to support any claim for violation of due process and the Forest Park defendants are entitled to summary judgment as a matter of law.

### e. Plaintiffs' Claim for Interference With Free Exercise of Religion Fails As A Matter of Law

This claim fails. The Free Exercise Clause of the First Amendment provides that "Congress shall make no law…prohibiting the free exercise" of religion. Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices *because* of their religious nature. *Fulton v. City of Philadelphia, Pennsylvania,* 141 S.Ct. 1868, 1877, 210 L.Ed.2d 137 (2021). The Supreme Court has recognized that a burden on religious exercise may occur both when a State proscribes religiously motivated activity and when a law pressures an adherent to abandon her religious faith or practice. *Sherbert v. Verner,* 374 U.S. 398, 406, 83 S.Ct.

1790, 10 L.Ed.2d 965 (1963); *Hobbie v. Unemployment Appeals Comm'n of Fla.,* 480 U.S. 136, 140-141, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987).

Here, there is no burden on Plaintiffs' religious exercise. Neither Pastor Couzens nor any member of IBC was pressured to give up his or her faith by the police officers. Neither did the officers enact any kind of ordinance or burden on the IBC and its members' ability to worship. The officers were there only for purposes of security, to keep peace and order in the Church during a tumultuous time. The officers' presence, which was familiar and known to the parishioners, had no basis in religion, was not religiously motivated, and did not violate Plaintiffs' First Amendment right to free exercise of religion. The Forest Park Defendants are therefore entitled to summary judgment as a matter of law.

### f. Plaintiffs' Claim for Civil Conspiracy Under 42 U.S.C. § 1983 Fails As A Matter of Law

Plaintiffs' claims for civil conspiracy and similarly misguided. "A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks,* 771 F.2d 935, 943-44 (6th Cir. 1985). To prevail on this claim, a plaintiff must show "that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy." *Heyne v. Metro. Nashville Pub. Sch.,* 655 F.3d 556, 563 (6th Cir. 2011). "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Id.*

Here, this is no evidence of a conspiracy. The record is devoid of any evidence indicating Forest Park and its officers shared in any single conspiratorial objective to engage in an unlawful action to injure another person. In fact, the evidence here proves the officers undertook no

unlawful action throughout the entirety of these events. There is no evidence of any agreement or plan concocted by the defendants in this action, supported by the fact that all of the defendants testified there are not familiar with each other. Jones testified he contacted Forest Park, for only the second time, to arrange a detail for the February 9th services. Jones paid for these services. The most the evidence here shows is that IBC, in keeping with practice, retained Forest Park to provide a security detail. This is a common practice city-wide among all police departments, it is constitutional, and any allegations of a "conspiracy" are completely unfounded.

### g. Plaintiffs' Claim for Civil Conspiracy Under Ohio Law Fails As A Matter of Law and Defendants Are Immune From These Claims

Plaintiffs' claim for Ohio common law civil conspiracy likewise fails as a matter of law. "Civil conspiracy" has been defined as "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.,* 1995-Ohio-61, 72 Ohio St.3d 415, 419, 650 N.E.2d 836, 866. To establish a claim of civil conspiracy, plaintiff must allege: 1) a malicious combination; 2) of two or more persons; 3) injury to person or property; and 4) existence of an unlawful act independent of an actual conspiracy. *Fed. Ins. Co. v. Webne,* 513 F.Supp.2d 921, 926-26 (N.D. Ohio 2007), citing *Kenty, supra,* 72 Ohio St.3d at 419. Malice "is that state of mind under which a person does a wrongful act purposely, without a reasonable or lawful excuse, to the injury of another." *Pickle v. Swinehart,* 170 Ohio St. 441, 443, 166 N.E.2d 227 (1960). "A civil conspiracy claim is derivative and cannot be maintained absent an underlying tort that is actionable without the conspiracy." *Morrow v. Reminger & Reminger Co., L.P.A.,* 183 Ohio App.3d 40, 2009-Ohio-2665, 915 N.E.2d 696, ¶ 40 (10th Dist).

Plaintiffs' claims fail under all prongs of the definition. As set forth in the previous section, the evidence presented is completely lacking in any indication of a conspiracy. Defendants Powell

and Jones hired the police department to work an off-duty detail, a normal occurrence for IBC. Powell testified her only contact with the police department was a letter she wrote after this incident. Jones' contact was to effectuate the hiring of the detail. Powell testified she had no previous contact with the police department, Jones had previously arranged one detail, and all of the officers testified they were not familiar with Powell or Jones. There was no intent to injure on the part of any Forest Park Police Officer. The officers were working a detail for which they were paid. Further, there is no underlying unlawful act. The officers performed general security at the Church, attempted to deescalate a situation that was getting out of hand, never touched or arrested anyone, never brandished a weapon, never raised their voice, indeed took no action at all other than to speak calmly to heated parties. In short, the police performed their job responsibilities, in an effective manner, and the detail was a successful outing. The subsequent fighting amongst the members of the Church and attempts to change locks or otherwise oust Pastor Couzens has nothing to do with the officers and is not attributable to the officers. The Forest Park defendants are therefore entitled to summary judgment as a matter of law.

### iii. The City of Forest Park and Chief Arns Are Immune From This Claim

In addition, the City of Forest Park and Chief Arns are immune from this claim. The Ohio Supreme Court has set forth a three-tiered analysis for determining whether a political subdivision is immune from liability. *Cater v. Cleveland*, 83 Ohio St. 3d 24, 28 (1998). O.R.C. §2744.02(A)(1) provides that "a political subdivision is not liable in damages in a civil action for injury, death or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." *GMAC v. Cleveland*, 2010 WL 125963, *2 (Ohio App. 8th Dist., 2010). "Governmental functions" include among other things, "[t]he provision or nonprovision of police *** services or

protection." *Id*; O.R.C. 2744.01(C)(2)(a). In the case at bar, the City of Forest Park is a political subdivision pursuant to O.R.C. § 2744.01(F) whose employees, Officer Harris, Eavers and Hall were performing a governmental function. Thus, the City of Forest Park and its officers are entitled to the broad grant of immunity set forth in O.R.C. §2744.02(A)(1).

Under the first tier of the three-tiered analysis, a political subdivision is granted broad immunity for any injury arising out of its actions. That broad blanket of immunity continues to be afforded to a political subdivision unless Plaintiffs can establish that one of the five exceptions stated in O.R.C. §2744.02(B) is applicable to take away that immunity. Thus, the second tier of the analysis focuses on the exceptions to immunity set forth in O.R.C. §2744.02(B). Finally, the third tier of the analysis involves possible defenses available to a political subdivision if Plaintiffs are able to establish that an exception set forth in O.R.C. §2744.02(B) is applicable. If Plaintiffs cannot establish that one of the five exceptions is applicable to the broad immunity afforded O.R.C. §2744, then the analysis never makes it to the third tier. As Plaintiffs cannot establish any exception to the general immunity afforded the City of Forest Park applies in this case, the analysis never reaches the third tier of the analysis. The City of Forest Park is immune from claims for intentional tort – including a claim for civil conspiracy. *Stillwagon v. City of Delaware,* 175 F.Supp.3d 874, 908 (S.D.Ohio 2016). Thus, the City of Forest Park is entitled to immunity pursuant to O.R.C. §2744 and summary judgment with respect to all state claims brought against it under the law of Ohio.

### iv. Officers Harris, Hall and Eavers Are Immune From This Claim

In addition to the immunity granted Forest Park, the individual officers are likewise immune from Plaintiffs' claim for civil conspiracy pursuant O.R.C. §2744.03(A)(6)(b) which states that an individual is "immune from liability unless" his "acts or omissions were with

malicious purpose, in bad faith, or in a wanton or reckless manner…" *Rush v. City of Mansfield*, 771 F.Supp.2d 827, 875 (N.D. Ohio, 2011). In *Herweh v. Bailey*, the court noted that for the purposes of immunity under R.C. Chapter 2744, wanton or reckless misconduct is the functional equivalent of "willful or wanton" misconduct under R.C. §2744.02(B)(1)(b). *Herweh v. Bailey*, 1996 WL 603793, 2 (Ohio App. 1st Dist.) citing *Brockman v. Bell*, 78 Ohio App.3d 508, 516 (1992) and *Thompson v. McNeil*, 53 Ohio St. 3d 102 (1990). Therefore, the analysis of the court was whether there was sufficient evidence in the record to show that the police officer's conduct was willful or wanton so as to abrogate immunity. In defining the terms *willful* and *wanton*, the court stated:

> "Wanton" misconduct is the failure to exercise any care whatsoever towards those to whom a duty is owed if the failure to exercise care occurs when there is a great probability of harm. (citations omitted). "Willful" misconduct involves an intent, purpose or design not to perform the duty of care that is owed. (citations omitted). *Herweh v. Bailey*, 1996 WL 603793, 2 (Ohio App. 1st Dist.) (citations omitted).

Chapter 2744 of the Ohio Revised Code governs whether employees of a political subdivision such as the City of Forest Park have immunity from liability. *Snyder v. U.S.*, 990 F.Supp.2d 818, 846 (S.D. Ohio, 2014). If such employee of a political subdivision is sued in his individual or personal capacity, O.R.C. § 2744.03(A)(6) governs the immunity analysis. *Id* citing *Elston v. Howland Local Schools*, 113 Ohio St.3d 314, 321 (2007). "Such an employee is immune unless: '(a) [that] employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) [that] employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; [or] (c) [c]ivil liability is expressly imposed upon the employee by a section of the Revised Code.'" *Id* citing O.R.C. § 2744.03(A)(6)(a)-(c). With respect to Plaintiffs' claims, Officers Harris, Hall and Eavers were acting within the scope of their employment and official responsibilities. Additionally, for the reasons already set forth, the

18

officers did not act with malicious purpose, in bad faith, or in a wanton or reckless manner. Finally, Plaintiffs cannot cite to any section of the Revised Code which would expressly impose civil liability against the individual officers. Thus, they are entitled to immunity under R.C. 2744.03(A) and dismissal with prejudice of all state claims including, but not limited to Plaintiffs' claims for civil conspiracy.

### h. Chief Arns[1] and The City of Forest Park Are Entitled to Summary Judgment As To Plaintiffs' Claims

Chief Arns is entitled to summary judgment as to all of Plaintiffs' claims. Suing a public official in his official capacity for acts performed within the scope of his authority is equivalent to suing the governmental entity." *Fairbanks v. City of Trenton*, 2016 WL 51223, *4 (S.D. Ohio, Jan. 5, 2016) citing *Soper v. Hoben*, 195 F.3d 845, 853 (6th Cir.1999). A municipality is "liable under § 1983 only where the municipality itself causes the constitutional violation at issue." *Id* citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

The law is clear that liability of supervisory personnel must be based on more than merely the right to control employees. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *Turner v. City of Taylor*, 412 F.3d 629 (6th Cir. 2005). Plaintiffs have not alleged Chief Arns took any action with respect to the claims set forth in their Complaint and the evidence further reveals no conduct on behalf of Chief Arns. As such, he is entitled to summary judgment with respect to all of Plaintiffs' claims.

Plaintiffs claims likewise do not give rise to any liability attributable to Forest Park under 42 U.S.C. § 1983. Plaintiffs have not alleged a failure to train claim here or otherwise set forth any

---

[1] In this case, Plaintiffs are only suing Defendant Chief William Arns in his official capacity as Police Chief for the City of Forest Park which is analogous to a suit against the City of Forest Park. *Pineda v. Hamilton County, Ohio,* 977 F.3d 483, 494 (S.D. Ohio, 2020), citing *Kentucky v. Graham,* 473 U.S. 159, 166-67, n. 14 (1985).

specific allegations against Forest Park. To establish municipal liability, a plaintiff must (1) "identify conduct properly attributable to the municipality" and (2) "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of the Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown,* 520 U.S. 397, 403, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) (emphasis in original). Thus, "a plaintiff must show that the municipal action taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* Furthermore, the Supreme Court has explained that, where a plaintiff seeks "to establish municipal liability on the theory that a facially lawful municipal action has led an employee to violate a plaintiff's rights[, then the plaintiff] must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Bryan Cnty.,* 520 U.S. at 407, 117 S.Ct. 1382. "A showing of simple or even heightened negligence will not suffice." *Id.*

Plaintiffs have failed their burden. Plaintiffs have failed to establish any conduct attributable to Forest Park and have further failed to identify any deprivation of federal rights or establish an injury. Lacking all of these elements, Plaintiffs' claims fail and Forest Park is entitled to summary judgment as a matter of law.

## IV. CONCLUSION

Based upon the foregoing, Defendants, City of Forest Park, Ohio, Chief William Arns, Officer Rebecca Eavers, Officer Corey Hall and Officer Vada Harris respectfully request this Court GRANT summary judgment as to all of Plaintiffs' claims and dismiss this action against these Defendants with prejudice at Plaintiffs' costs.

Respectfully submitted,

*/s/ Katherine L. Barbiere*
Lawrence E. Barbiere (0027106)
Katherine L. Barbiere (0089501)
SCHROEDER, MAUNDRELL, BARBIERE & POWERS
5300 Socialville-Foster Road
Mason, Ohio 45040
513-583-4200
513-583-4203 fax
Email: lbarbiere@smbplaw.com
             kbarbiere@smbplaw.com
*Attorneys for Defendants City of Forest Park, Chief William Arns, Officer Corey Hall, Officer Rebecca Eavers, Officer Vada Harris*

## CERTIFICATE OF SERVICE

I hereby certify that on January 7, 2022 a copy of the foregoing was filed using the Clerk of Court's CM/ECF filing system which will send notification of such filing to all counsel of record.

*/s/ Katherine L. Barbiere*
Katherine L. Barbiere (0089501)