UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| PASTOR VICTOR S. COUZENS, et al., | Case No. 1:20-CV-546 |
| Plaintiffs, | Judge Michael R. Barrett |
| v. | |
| CITY OF FOREST PARK, OH, et al., | **OPINION & ORDER** |
| Defendants. | |

This matter is before the Court on the motions for summary judgment filed by Defendants William Arns, Rebecca Eavers,[1] Corey Hall, Vada Harris, and the City of Forest Park ("Forest Park Defendants"), (Doc. 36), and Defendants Alandes Powell and Martin Jones, (Doc. 38). Plaintiffs Victor S. Couzens and Inspirational Baptist Church ("IBC") have responded in opposition, (Doc. 45), and Defendants have replied, (Docs. 52 & 53). For the following reasons, the Court will grant summary judgment in favor of the defendants.

**I. BACKGROUND**

Plaintiffs allege that, sometime prior to December 27, 2019, Powell and Jones—who were elders of IBC at the time—took it upon themselves to divest Couzens of his position as the senior pastor and spiritual leader of the church. (Doc. 1, PageID 6). Specifically, Plaintiffs contend that Powell and Jones arranged a meeting of IBC members

---

[1] Now Rebecca Davis. (*See* Doc. 35, PageID 1122).

1

in order to hold a formal vote on the matter, but were not authorized to do so under IBC's bylaws and subsequently misrepresented the outcome of the vote. (*Id.*). Nevertheless, in early-February 2020, Powell and Jones sent Couzens a letter informing him that his employment contract with IBC had been terminated. (*Id.*). Plaintiffs allege that Powell and Jones then provided a copy of the letter to the Forest Park Police Department ("FPPD") and requested an off-duty detail to accompany them to IBC on February 9, 2020. (*Id.*).

On February 9, 2020, Harris and Hall—officers of the Forest Park Police Department ("FPPD")—arrived at IBC wearing their FPPD uniforms. (*Id.*, PageID 7). Eavers—another officer—arrived shortly after Couzens called the FPPD to report that he was being kept out of IBC. (*See* Doc. 36, PageID 1173). Plaintiffs allege that Harris, Hall, and Eavers then continued to deny Couzens access to private areas of IBC, ordered the sound engineer to shut off Couzens's microphone, and informed Couzens that he "could leave IBC voluntarily or would be dragged away in handcuffs." (Doc. 1, PageID 7).

Plaintiffs contend that the actions of Defendants were taken "under the color of state law" and "constituted an unreasonable search and seizure" in violation of the Fourth Amendment, that Defendants deprived Plaintiffs of the "rights to liberty and substantive due process in violation of the Fourteenth Amendment," that Defendants violated Plaintiffs' "rights to the free exercise of religion secured by the First Amendment," that Defendants "conspired together to create a single plan to deprive [Plaintiffs] of their constitutionally protected rights," and that Defendants' actions "constituted a malicious combination of two or more persons injuring [Plaintiffs'] person or property . . . in violation of the common law of the state of Ohio." (*Id.*, PageID 8-10).

## II. STANDARD OF LAW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (noting that a fact is "material" only when its resolution affects the outcome of an action, and a dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party"). The Court views the evidence and draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the moving party has satisfied its initial burden of showing the absence of a genuine issue of material fact, the nonmoving party may not rest on the mere allegations in the pleadings, but must instead put forth specific facts showing that there is a genuine issue for trial. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

## III. ANALYSIS

As a preliminary matter, the Forest Park Defendants assert that Harris, Hall, and Eavers are shielded from liability in this matter by qualified immunity, and the City of Forest Park[2] is entitled to summary judgment because Plaintiffs have failed to set forth any basis for municipal liability.

First, the Court must determine whether a seizure occurred in violation of the Fourth Amendment, and, if so, whether that seizure was unreasonable. Fourth Amendment jurisprudence provides that "a person is seized not only when a reasonable

---

[2] Although Plaintiffs name Arns in their complaint, their claims against him are strictly in his official capacity as chief of police. Therefore, the Court views the claims against Arns as claims against Forest Park itself. *See, e.g.*, *Smith v. Leis*, 407 F. App'x 918, 927 (6th Cir. 2011).

3

person would not feel free to leave an encounter with police, but also when a reasonable person would not feel free to remain somewhere, by virtue of some official action." *Bennett v. City of Eastpointe*, 410 F.3d 810, 834 (6th Cir. 2005). Situations that are indicative of a seizure may include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Jones*, 562 F.3d 768, 772 (6th Cir. 2009).

Critically, under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established." *Id.* (quoting *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011); *see also Moderwell v. Cuyahoga County*, 997 F.3d 653, 659-60 (6th Cir. 2021). "Once the qualified immunity defense is raised, the burden is on the plaintiff to demonstrate that the officials are not entitled to qualified immunity." *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006); *see Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013) (noting that qualified immunity will shield a defendant unless both prongs of the analysis are satisfied).

4

A review of the record could lead to the conclusion that the actions of Harris, Hall, and Eavers constituted a seizure. Couzens testified in his deposition that Harris said to him: "you need to leave right now, and you're either going to leave on your own or you're going to leave in handcuffs." (Doc. 28, PageID 205). Moreover, in her affidavit, Abigail Couzens testified that Harris informed her Couzens would be arrested if he did not leave the pulpit. (Doc. 47-2, PageID 1612). For their part, Harris and Hall both testified that they did not threaten to arrest Couzens. (Doc. 34, PageID 1089); (Doc. 33, PageID 1027). The language, though, may reasonably be understood to indicate that the request to leave the pulpit was not optional. Accordingly, there is a genuine issue of material fact as to whether a seizure occurred. *See Jones*, 562 F.3d at 772 (holding that the use of language or tone of voice indicating that compliance with the officer's request might be compelled may constitute a seizure).

However, "the ultimate question is whether the totality of the circumstances justifies a particular sort of seizure" and "the proper application of the reasonableness inquiry requires careful attention to the facts and circumstances of each particular case." *Thacker v. Lawrence County*, 183 Fed. Appx. 464, 471 (6th Cir. 2006). Plaintiffs contend that the alleged seizure was unreasonable simply because the officers lacked a court order authorizing them to remove Couzens from the pulpit. (Doc. 47, PageID 1589). In making this argument, they rely primarily on two cases: *Hensley v. Gassman*, 693 F.3d 681 (6th Cir. 2012) and *Middaugh v. City of Three Rivers*, 674 Fed. Appx. 522 (6th Cir. 2017).

In *Middaugh*, the court found the actions of the defendants to be unreasonable because, among other things, the document presented to the officers contained internal

5

contradictions. *Middaugh*, 674 Fed. Appx. at 529. And, in *Hensley*, the court found that the defendants acted unreasonably because they conceded that they knew—at the time of their action—that they lacked any evidence supporting their authority to repossess a vehicle. *Hensley*, 693 F.3d at 692. By contrast, Hall testified that he is familiar with court orders and believed that the document provided to him was a "legit piece of paper with proper authority." (Doc. 34, PageID 1076-77). Moreover, Harris testified that he believed the document was a court order and he would not have asked Couzens to step away from the pulpit had he recognized otherwise. (Doc. 33, PageID 1045-1046).

Plaintiffs have failed to introduce evidence showing that, like in *Middaugh*, the document provided to the Forest Park Defendants was internally contradictory or suspicious, such that any reliance upon it—mistaken or not—was unreasonable. *See Heien v. North Carolina*, 574 U.S. 54, 61 (2014) (noting that a seizure based upon a mistake of material fact may nevertheless be reasonable). Nor have Plaintiffs established that, like in *Hensley*, the Forest Park Defendants knew that they lacked authority to ask Couzens to step away from the pulpit. Here, the Court must conclude that Defendants' actions were reasonable, even if based upon a mistake. Therefore, the Forest Park Defendants are entitled to qualified immunity and Plaintiffs have failed to put forth a genuine issue of material fact as to whether a violation of the Fourth Amendment occurred.

As for the alleged First Amendment violations, the United States Supreme Court has held that "a plaintiff may carry the burden of proving a free exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable.'" *Kennedy v.*

*Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2421-2422 (2022). A policy is not neutral if it "discriminates on its face, or if a religious exercise is otherwise its object." *Id.* (citing *Church of Lukumi Babalu Aye v. City of Hialeah,* 508 U. S. 520, 533 (1993)). And "a government policy will fail the general applicability requirement if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Id.*

Plaintiffs allege that the City of Forest Park had a policy to delegate police power to private citizens and that this delegation resulted in constitutional violations. They do not, however, offer any evidence tending to show any such policy, let alone any such policy that focuses on or prohibits religious conduct in any way. In addition, the policies included in the record do not suggest any type of non-neutrality toward religious conduct. Therefore, Plaintiffs have failed to show a genuine issue of material fact as to the alleged First Amendment violations.

Plaintiffs next claim that the alleged threats to arrest Couzens were "arbitrary and shocking," and that the "shocking" nature of these threats amounted to a violation of Fourteenth Amendment substantive due process rights. (Doc. 47, PageID 1603). But the United States Court of Appeals for the Sixth Circuit has held that "where a plaintiff complains of an unreasonable search and seizure, the claim is more properly analyzed under the Fourth Amendment than the substantive due process provision of the Fourteenth Amendment, since the former is a more explicit textual source of constitutional protection." *Wilson v. Wilkins*, 362 F. Appx. 440, 443 (6th Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Because Plaintiffs' substantive due process argument rests on the same set of facts underlying the claim of an unreasonable seizure, the Fourth

7

Amendment is the proper vehicle for that claim, and the Court has already analyzed it accordingly.

The Court similarly finds no merit in Plaintiffs' attempts to establish municipal liability or allege a civil conspiracy in violation of 42 U.S.C. § 1983. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001) (holding that "if no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983"); *Trans Rail Am., Inc. v. Hubbard Twp.*, 478 Fed. Appx. 986, 988 (6th Cir. 2012) (noting that a civil conspiracy cannot exist without an underlying constitutional deprivation). And finally, Defendants are entitled to summary judgment on Plaintiffs' civil conspiracy claims under Ohio law because there is no evidence of an unlawful act or an actual injury distinct from the alleged conspiracy. *Peltz v. Moretti*, 292 Fed. Appx. 475, 480 (6th Cir. 2008).

## IV. <u>CONCLUSION</u>

For the foregoing reasons, and due to the absence of a genuine issue of material fact as to any of the outstanding claims, the motions for summary judgment are **GRANTED**.

**IT IS SO ORDERED.**

                                             ___*/s/ Michael R. Barrett*___
                                             Michael R. Barrett
                                             United States District Judge