# UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 |  |
|---|---|---|
| Kelly L. Stephens | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |


Filed:  August 27, 2024


Ms. Katherine L. Barbiere
Schroeder, Maundrell, Barbiere & Powers
5300 Socialville-Foster Road
Suite 200
Mason, OH 45040

Mr. Marc D. Mezibov
Mezibov Butler
615 Elsinore Place, Suite 105
Cincinnati, OH 45202


Re:  Case No. 23-3930, *Victor Couzens, et al v. City of Forest Park, OH, et al*
Originating Case No. : 1:20-cv-00546


Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.


Yours very truly,

Kelly L. Stephens, Clerk


Cathryn Lovely
Deputy Clerk


cc:  Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0200p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

VICTOR S. COUZENS,

*Plaintiff-Appellant*,

*v.*

CITY OF FOREST PARK, OHIO; WILLIAM ARNS, in his
official capacity; REBECCA EAVERS, COREY HALL, and
VADA HARRIS, in their official and personal capacities,

*Defendants-Appellees.*

No. 23-3930

———————————

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:20-cv-00546—Michael R. Barrett, District Judge.

Argued: July 24, 2024

Decided and Filed: August 27, 2024

Before: SILER, COLE, and BUSH, Circuit Judges.

———————————

#### COUNSEL

**ARGUED:** Marc D. Mezibov, MEZIBOV BUTLER, Cincinnati, Ohio, for Appellant.
Katherine L. Barbiere, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Mason, Ohio,
for Appellees. **ON BRIEF:** Marc D. Mezibov, MEZIBOV BUTLER, Cincinnati, Ohio, for
Appellant. Katherine L. Barbiere, SCHROEDER, MAUNDRELL, BARBIERE & POWERS,
Mason, Ohio, for Appellees.

———————————

## OPINION

———————————

JOHN K. BUSH, Circuit Judge.  "A house divided against itself cannot stand."[1]  So too, it seemed, for a house of worship in this case.  Off-duty police made the mistake of involving themselves in that division, which is the genesis of this suit.

Inspirational Bible Church ("IBC") faced declining membership and worsening finances after its pastor, plaintiff Victor Couzens, committed a publicized indiscretion.  Leaders within the congregation organized a vote to oust him from his position.  To enforce this decision, they hired off-duty police officers for the next Sunday service.  At that gathering Couzens briefly took the pulpit, but  officers threatened arrest, causing him to leave the church building.  Couzens then sued the officers, their police chief, and the City of Forest Park (collectively, the "Forest Park Defendants"), as well as certain church leaders, alleging that they conspired to deny him his constitutional rights.  The district court, however, granted summary judgment in defendants' favor.  We affirm.

I

### A.  Factual Background

Couzens had led IBC as senior pastor since 2000.  But, in 2018, he faced public accusations of an adulterous relationship.  After these revelations, there was an exodus of church members: the congregation shrank from 2,000 to around 200 members.  In June 2019, Couzens held a meeting with church leaders to improve the church's negative culture and reverse its declining membership.  Despite Couzens's efforts, though, IBC was late on its mortgage payments, and the bank—concerned about its borrower's financial status—issued an ultimatum: in order to renegotiate lending terms, IBC needed to remove Couzens as pastor.  When Couzens learned of the bank's ultimatum, he tried to suppress it.  But Zacheriah Davis, IBC's executive pastor, shared it with others in the church.  Couzens responded by firing Davis.

———————————

[1]Abraham Lincoln, Address at the Republican State Convention, Springfield, Ill. (June 16, 1858); *see also Mark* 3:25.

No. 23-3930 *Couzens v. City of Forest Park, Ohio* Page 3

Some church leaders then quickly organized a vote in which approximately 97% of participants supported firing Couzens. Alandes Powell and Martin Jones, who previously served as IBC elders, wrote Couzens a letter informing him that, pursuant to the vote, IBC had removed him as pastor.

But Davis expected that Couzens "was not going to adhere to his notice to vacate the pulpit." Jones Dep., R. 30, PageID 528. So Davis recommended that Jones hire off-duty Forest Park police officers to "make sure everything runs smoothly" during services on the Sunday following the notice, which was February 9, 2020. *Id.* IBC often paid off-duty officers to provide general security for services to supplement IBC's own armed security team. When Jones reached out to the police department to secure an off-duty detail, he explained that he needed officers to "make sure nothing got crazy on that particular day at the church" because of "turmoil within the church." Dryer Dep., R. 29, PageID 419. Jones mentioned Couzens in his request, but he did not specifically ask that officers keep Couzens off the premises or away from the pulpit.

Officers Vada Harris and Corey Hall signed up for the off-duty detail. Under the police department's standard operating procedures, off-duty officers acted with full police authority (including the ability to arrest), wear their police badges and uniforms, and carry their firearms. When the officers arrived that Sunday, February 9, Jones presented various documents to the off-duty officers, including a letter that Jones and Powell had sent Couzens three days earlier, on February 6. That letter—on IBC letterhead and signed by Jones, Powell, and "the partners of" IBC—invoked IBC's constitution, its by-laws, and Ohio law to explain that Couzens had been fired as pastor, directing him to vacate the premises as of February 7. Dryer Dep. Ex. 3, R. 29-1, PageID 457–58. With these documents and instructions from a superior officer, Harris understood that the officers were to treat Couzens "as a patron or a churchgoer," but that if Couzens refused a request from officers to leave, then he should be "treated as a trespasser" subject to arrest. Harris Dep., R. 33, PageID 1017–20. Hall also thought that they were to treat Couzens as someone who was not allowed on the property.

That was news to Couzens.  Before he arrived at the church, Couzens had received a call from the head of IBC's own security team telling him that the church locks had been changed and that police were at the church.  When Couzens arrived, he called the department, informed them that someone changed the church locks, and asked for an officer to escort him about the church.  Dispatch sent Officer Rebecca Davis née Eavers to do so.  Couzens next tried to enter the church through a private entrance, but Officer Hall refused to open the door secured by a new lock.  Officer Harris then approached Couzens and told him that, while Couzens could attend the service, he could not act as a bishop (that is, with ecclesiastical authority).

Despite that verbal order, Couzens took the pulpit at the beginning of the service to address the congregation and lead them in prayer.  At that point, Jones and others told the officers that they wanted Couzens away from the podium.  The officers then advised Couzens's wife that he would need to vacate the pulpit.  So, after Couzens finished the prayer and sat down, his wife went up to him and told him that "the police said that if [he did not] come off of the platform now, they're going [to] come up there and they're going to drag you out."  Couzens Dep., R. 28, PageID 201.  Couzens avoided that escalation by stepping down from the podium. Officer Hall then told him that he needed to leave the church building because the letter stated that Couzens no longer served as pastor.  When Couzens resisted Hall's direction, Hall threatened to arrest Couzens for trespass.  Finally, Couzens left.

### B.  Procedural Background

Couzens and IBC sued two sets of defendants: (1) the Forest Park Defendants (Forest Park, Arns, Eavers, Hall, and Harris), and (2) Powell and Jones.  Plaintiffs asserted claims under 42 U.S.C. § 1983 of unreasonable seizure under the Fourth Amendment and infringement of free exercise of religion under the First Amendment, as well as § 1983 and state law civil conspiracy claims.[2]  Both sets of defendants moved for summary judgment.

---

[2]The complaint frames plaintiffs' Fourth Amendment claim as implicating both a search and a seizure, but on appeal Couzens focuses solely on seizure.  Plaintiffs also alleged a substantive due process claim below, but the district court granted summary judgment to defendants on that claim and this ruling has not been appealed.

No. 23-3930                 *Couzens v. City of Forest Park, Ohio*                 Page 5

The district court granted both motions. It concluded that—while the record could show that Officers Harris, Hall, and Eavers seized Couzens—their actions were not unreasonable. The district court further determined that plaintiffs' free exercise claim failed because the challenged police department policy did not target religious conduct. And without constitutional violations from individual defendants, the district court found no merit to plaintiffs' municipal liability and civil conspiracy claims. Couzens timely appealed his claims against the Forest Park Defendants.[3]

II

We review a grant of summary judgment de novo. *Morgan v. Trierweiler*, 67 F.4th 362, 366 (6th Cir. 2023). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this analysis, the court "must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party." *Rhinehart v. Scutt*, 894 F.3d 721, 735 (6th Cir. 2018) (citing *Anderson*, 477 U.S. at 251–52, 255).

III

Couzens argues that the district court erroneously granted summary judgment on his constitutional, civil conspiracy, and municipal liability claims. We address each in turn.

---

[3]At oral argument, Couzens's counsel contended that he represented both Couzens and IBC on appeal. But the notice of appeal must "specify the party or parties taking the appeal by naming each one in the caption or body of the notice." Fed. R. App. P. 3(c)(1). While the caption of Couzens's notice of appeal uses "et al." after Couzens's name, as did the district court's caption, Couzens uses the singularized "Plaintiff" on appeal, in contrast to the pluralized "Plaintiffs" employed by the district court. And the body of the notice only mentions Couzens's, not IBC's, appeal from the district court order granting summary judgment to defendants. Further, Couzens's civil appeal statement filed with this court described "Plaintiff's" issues, meaning those raised by "Pastor Victor S. Couzens." Civil Appeal Statement of Parties and Issues, ECF No. 8. All told, it is clear to us that only Couzens, not IBC, appealed the district court decision.

## A. Constitutional Claims

Defendants invoke qualified immunity against Couzens's claims under 42 U.S.C. § 1983 based on alleged First and Fourth Amendment violations.[4]  "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Williams v. Maurer*, 9 F.4th 416, 430 (6th Cir. 2021) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Thus, a defendant is entitled to qualified immunity on summary judgment unless the facts, when viewed in the light most favorable to the plaintiff, would permit a reasonable juror to find that: (1) the defendant violated a constitutional right; and (2) the right was clearly established."  *Id.* (quoting *Bishop v. Hackel*, 636 F.3d 757, 765 (6th Cir. 2011)).  "Qualified immunity extends to government officials' objectively reasonable mistakes, 'regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"  *Hensley v. Gassman*, 693 F.3d 681, 687 (6th Cir. 2012) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  "[A]lthough on summary judgment this Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party, when a defendant raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must show that those facts and inferences would allow a reasonable juror to conclude that the defendant violated a clearly established constitutional right."  *Williams*, 9 F.4th at 430–31.

---

[4]The parties do not dispute that the officers, despite working in an off-duty capacity, constitute state actors for purposes of § 1983.  Facing § 1983 claims, though, officers in other cases have argued that they do not act under color of state law when they work in off-duty capacities, albeit they often drop these arguments on appeal.  *See, e.g.*, *Pineda v. Hamilton Cnty.*, 977 F.3d 483, 489 (6th Cir. 2020); *Vanderhoef v. Dixon*, 938 F.3d 271, 275 n.2 (6th Cir. 2019).  "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."  *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal quotation marks and citation omitted).  So "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law."  *Id.* at 50; *accord Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001).  Conversely, an officer's "private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law."  *Waters*, 242 F.3d at 359.  Although off-duty work sits between official and private conduct, the circumstances here indicate that the officers acted under color of state law: they wore uniforms and badges, carried arms, served on a security detail facilitated by the department, and threatened to take the official action of arresting Couzens.

### 1. Fourth Amendment Claim

The Fourth Amendment protects "against unreasonable . . . seizures." U.S. Const. amend. IV. Couzens contends that the officers unreasonably seized him when they threatened arrest without a court order authorizing them to remove him from the pulpit. The district court, while finding that the record could show that the officers seized Couzens, determined that their "actions were reasonable, even if based upon a mistake." Order Granting Defs.' Mots. for Summ. J., R. 54, PageID 1672.

The district court properly determined that the record could show that the officers seized Couzens under the Fourth Amendment. "Fourth Amendment jurisprudence suggests a person is seized . . . when a reasonable person would not feel free to remain somewhere, by virtue of some official action." *Bennett v. City of Eastpointe*, 410 F.3d 810, 834 (6th Cir. 2005).[5] "Examples of circumstances that might indicate a seizure . . . would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Here, while the officers did not physically touch Couzens, the record read in Couzens's favor supports that they seized him when those officers, bearing their weapons, directed Couzens to leave the church or else be arrested.

That said, the Forest Park Defendants are only liable for *unreasonable* seizures. It is on this requirement that Couzens's claim fails. The reasonableness inquiry turns on "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S.

---

[5]Appellees, citing *Youkhanna v. City of Sterling Heights*, argue that police commands to vacate a place, particularly a private one, do not constitute a Fourth Amendment seizure without the use of some physical force. 934 F.3d 508 (6th Cir. 2019). But *Youkhanna* limited this principle to "circumstances where the person being asked to leave is not privileged to remain in the space—either because the space is no longer open to the public (for example, a building is closing or the space must be cleared of all people for safety reasons) or because the person's behavior violated a rule, ordinance, or law (for example, by causing a disturbance)." *Id.* at 523 (citing *Bennett*, 410 F.3d at 834 favorably). Here, read in the light most favorable to Couzens, Harris told Couzens that, while he could not preside over the service as a bishop, IBC permitted him to attend the publicly accessible church service. Thus, Couzens was privileged to remain in the space, albeit not on the platform. So Appellees' reliance on *Youkhanna* is not persuasive.

No. 23-3930                    *Couzens v. City of Forest Park, Ohio*                    Page 8

386, 397 (1989). Qualified immunity insulates objectively reasonable mistakes of fact, *Hensley*, 693 F.3d at 687, and Couzens bears the burden of showing that the Forest Park Defendants are not entitled to qualified immunity, *Williams*, 9 F.4th at 430–31.

Couzens contends that the officers acted unreasonably because they seized him based on internally contradictory and suspicious documents that Jones presented to them, including the February 6 letter. Here and before the district court, Couzens relies primarily on two cases to attack the reasonableness of his seizure: *Hensley*, 693 F.3d 681 and *Middaugh v. City of Three Rivers*, 684 F. App'x 522 (6th Cir. 2017). But these cases do not support his argument. Couzens uses *Hensley* to argue that the officers needed a court order to intervene in private disputes, but *Hensley* does not require officers to act pursuant to a court order for their seizure to be reasonable—rather, it merely recognized that a court order would make a plaintiff's unreasonableness showing nearly impossible. *Hensley*, 693 F.3d at 692. That decision did not hold that a court order is always required for a seizure to be reasonable. Rather, *Hensley* recognized that, without a court order, a seizure still could be lawful if there was other "evidence substantiating [the party on whose behalf they intervened's] claim of authority." *Id.* Here, although the officers acted without a court order, they had other evidence on which they relied— namely, the February 6 letter, which bolstered Jones and others' claim of authority.

Couzens attacks the officers' reliance on that letter. He cites *Middaugh* to argue that police intervention in a private dispute is unreasonable when (a) the police knew the civil dispute exists, (b) knew that the party on whose behalf officers intervened lacked a court order supporting their claim, and (c) relied instead on facially suspicious documents to justify seizure. *Middaugh*, 684 F. App'x at 528–29. *Middaugh*, involving a dispute over ownership of a car, was an unpublished decision and therefore does not bind us. But even if it did, Couzens's argument fails on the third factor cited in *Middaugh*, because he lacks sufficient proof to show that the February 6 letter was facially suspicious. In fact, the letter had several indicia of legitimacy: it used IBC letterhead, was signed by church leaders, and described a vote to remove Couzens as pastor under church law. The officers acted according to that letter because they did not seize Couzens until he purported to act as pastor. And both Hall and Harris testified that they believed the letter to be legitimate. Even if the officers mistakenly understood that they acted under

legitimate auspices, their reliance on the February 6 letter did not render Couzens's seizure unreasonable. Couzens has not met his burden of showing that the officers unreasonably seized him, so qualified immunity insulates them from his Fourth Amendment claim.

### 2. First Amendment Claim

Before turning to Couzens's First Amendment claim, one clarification: although he argued at summary judgment that defendants violated his First Amendment rights by stopping him from leading the church service, the district court limited its First Amendment analysis to whether the City of Forest Park maintained a policy that delegated police power to private citizens (which violated Couzens's First Amendment rights). But the district court's ruling on this issue relates more to Couzens's municipal liability claim than his First Amendment argument against the individual officers. So we will handle the matter this way: we discuss Couzens's First Amendment claim against the city in the next section and his free exercise claim against the individual officers here.

The Free Exercise Clause of the First Amendment prevents states from "prohibiting the free exercise" of religion. U.S. Const. amend. I; *see Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Couzens contends that the Forest Park Defendants interfered with his free exercise of religion when the officers threatened to arrest him during a church service. He relies primarily on *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94 (1952). There, two sides sought to acquire control over a Russian Orthodox Cathedral: an archbishop appointed by the Patriarch in Moscow and a New York corporation on behalf of an archbishop chosen by American churches. *Id.* at 95–96. New York courts ruled for the American side, relying on a state law that subjected all Russian Orthodox churches in New York to American, not Russian, authority. *Id*. at 97–98. The Supreme Court concluded that the state law violated the Free Exercise Clause. *Id.* at 100, 107, 119. The Court recognized that, under this provision, churches have the "power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Id.* at 116. So *Kedroff* extended constitutional protection over the "[f]reedom to select the clergy, where no improper methods of choice are proven, . . . as a part of the free exercise of religion against state interference." *Id.*

*Kedroff*'s church-autonomy doctrine, though, guarantees the independence of ecclesiastical bodies, not individuals. *Id.* at 116 (constitutionalizing a precedent that guaranteed the "freedom for religious organizations . . . as a part of the free exercise of religion against state interference"). So *Kedroff* would only support IBC's rights, not Couzens's, and IBC is not a party to this appeal. And, unlike in *Kedroff*, the officers' actions here did not reflect the state's preference for one contender for a church's control over another. Instead, the officers attempted to enforce what, from their perspective, appeared to be a settled matter: Couzens's removal as IBC's pastor. *Kedroff* does not establish that the officers violated Couzens's free exercise rights.[6]

Because Couzens fails to establish a constitutional violation, we affirm the district court's rulings on his Fourth and First Amendment claims.[7]

## B. Civil Conspiracy and Municipal Liability Claims

Couzens contends that the Forest Park Defendants conspired with Jones and Powell to deprive him of his constitutional rights, and that Forest Park maintained a policy that delegated police power to private citizens who could direct officers to violate the Constitution. Because the district court found no underlying constitutional deprivation, it also found no merit in the civil conspiracy and municipal liability claims.[8] The district court properly rejected the

---

[6]Couzens's preoccupation with *Kedroff*, coupled with his otherwise generic free exercise arguments about separation of church and state, lead him to forgo other ways recognized in *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022) to establish a free exercise violation: a showing "that a government entity has burdened [a] sincere religious practice pursuant to a policy that is not 'neutral' or 'generally applicable,'" *id.* at 525 (quoting *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990)), or a "that the government has made '"official expressions of hostility" to religion'" that "accompany laws or policies burdening religious exercise," *id.* at 525 n.1 (2022) (quoting *Masterpiece Cakeshop v. Colorado C.R. Comm'n*, 584 U.S. 617, 639 (2018)). Couzens fails to point to any government policy targeting religious practice. So, even if Couzens had relied on one of those examples from *Kennedy*, his free exercise claims would fail under that case.

[7]The Forest Park Defendants also argue that, even if the officers did violate a constitutional right, that right was not clearly established, so qualified immunity insulates the officers from liability. The district court did not assess the clearly established prong for either the Fourth or First Amendment claim because it found no constitutional violation. Couzens bears the burden of establishing that the rights which the Forest Park Defendants violated were clearly established then. *Williams*, 9 F.4th at 431. And the cases he cites to establish those rights do not squarely fit this case. So, even assuming that Couzens established constitutional violations here, those violations were not clearly established for purposes of qualified immunity.

[8]Because Couzens sued Arns in his official, not personal, capacity, the district court correctly treated those claims as claims against Forest Park. *Everson v. Leis*, 556 F.3d 484, 493 n.3 (6th Cir. 2009).

conspiracy claims under § 1983 and Ohio law on that basis.  *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 496 (6th Cir. 2007) ("To establish a 'conspiracy' under a Section 1983 claim, a plaintiff must first demonstrate a constitutional deprivation." (citing *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985))); *Universal Coach, Inc. v. New York City Transit Auth., Inc.*, 629 N.E.2d 28, 33 (Ohio Ct. App. 1993) (requiring the "existence of an unlawful act independent from the actual conspiracy" to support an Ohio civil conspiracy claim).  Similarly, Couzens predicates his municipal liability claim on Forest Park maintaining a policy that led to the deprivation of his constitutional rights.  *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 566 (6th Cir. 2018) (requiring plaintiffs to identify a policy or custom, connected to the municipality, that caused a constitutional injury in its execution).  Because Couzens fails to show that the officers deprived him of a constitutional right, this claim also does not succeed.

## IV

Because Couzens fails to meet his burden of establishing that the Forest Park Defendants deprived him of his constitutional rights, we affirm.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 23-3930

VICTOR S. COUZENS,

    Plaintiff - Appellant,

    v.

CITY OF FOREST PARK, OHIO; WILLIAM ARNS, in his
official capacity; REBECCA EAVERS, COREY HALL, and
VADA HARRIS, in their official and personal capacities,

    Defendants - Appellees.

> **FILED**
> Aug 27, 2024
> KELLY L. STEPHENS, Clerk

Before:  SILER, COLE, and BUSH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk